IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| BRIAN HOOP, an individual, | Case No.: |
| Plaintiff, | |
| vs. | **COMPLAINT** |
| EMMA DOE and JOHN DOES I-XX, | **Jury Trial Demanded** |
| Defendants *in personam*, | |
| - and - | |
| 177.7621 ETHER, | |
| Defendant *in rem*, | |
| - and - | |
| MEXC GLOBAL, LLC, a | |
| Delaware Limited Liability Company, | |
| Relief Party and Garnishee. | |

**COMES NOW** the Plaintiff, Brian Hoop, by and through his undersigned counsel Joseph R. Casey of Harding Law Offices, and sets forth his Complaint against Defendant Emma Doe ("Emma Doe"); Defendants John Does I-XX (collectively "John Doe Defendants"); and *In Rem* Defendant 177.7621 Ether ("Ether Defendant"); and Garnishee and Relief Party MEXC Global LLC ("MEXC Global") as follows:

### NATURE OF THE ACTION

1. This is a civil action arising under 18 U.S.C. § 1962 et seq. and multiple other tortious acts in violation of Iowa statutory and common law.

2. This matter stems from Defendants' theft of $232,792.66 worth of digital assets (cryptocurrency) held by Plaintiff. All of the virtual assets were based on the Ethereum blockchain.[1]

3. The theft occurred through an increasingly common and sophisticated fraudulent scheme known as a "pig-butchering scam," wherein victims such as Plaintiff are "fattened" for financial "slaughter" by tricking the victim into giving cryptocurrency to the scammer through the creation of a website designed to mimic a legitimate cryptocurrency exchange.

4. Plaintiff was one victim of a scheme causing more than $3.3 billion ($3,300,000,000.00) in financial losses in 2022, according to the Federal Bureau of Investigation. Consumer losses have been staggering, generating extensive media attention.[2]

5. The Defendants took numerous measures to obscure the resulting transaction trail left behind on the Ethereum blockchain.

6. Plaintiff's investigation has led it to initiate recovery actions in the United States, where recovery of the stolen assets may be affected, as Defendants currently possess all or a significant portion of Plaintiff's stolen property or proceeds therefrom.

## PARTIES, JURISDICTION, AND VENUE

7. Plaintiff Brian Hoop ("Hoop") is a natural person residing in Fort Dodge, Webster County, Iowa.

8. Defendant Emma Doe is an individual whose true residence is unknown. Plaintiff will attempt to identify Defendant Emma Doe through discovery served on known third parties with whom Defendants interacted and through additional investigation of the theft and

---

[1] FBI Public Service Announcement dated 14 March 2023 (available at https://www.ic3.gov/Media/Y2023/PSA230314 as of 27 May 2023.
[2] See, for example, Lily Hay Newman, "'Pig Butchering' Scams Are Now a $3 Billion Threat." *Wired Magazine* (9 March 2023) (available at https://www.wired.com/story/pig-butchering-fbi-ic3-2022-report/ as of 27 May 2023).

subsequent transfers of the stolen assets. As of the date of this Complaint, Plaintiff suspects Defendant Emma Doe is a resident of China.

9. John Doe Defendants I-XX are individuals of unknown residence who assisted Defendant Emma Doe in perpetuating the wrongdoing alleged herein. Plaintiff will attempt to identify Defendants John Doe I-XX through discovery served on known third parties with whom Defendants John Doe I-XX interacted and through additional investigation of the theft and subsequent transfers of the stolen assets. As of the date of this Complaint, Plaintiff suspects Defendants John Doe I-XX are residents of China.

10. Defendant *in rem* 177.7621 Ether is 177.7621 Ether cryptocurrency native to the decentralized blockchain Ethereum.

11. Garnishee and Relief Party MEXC Global LLC is a Delaware limited liability company.

12. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as Plaintiff's claims include a cause of action pursuant to 18 U.S.C. § 1964(a).

13. The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

14. Jurisdiction and venue are proper in the Southern District of Iowa because the conduct giving rise to this action – including the Defendants' inducement of Plaintiff to transfer assets which Defendants used as part of their tortious schemes – was directed towards an Iowa plaintiff, involved Plaintiff's use of accounts at financial institutions in Des Moines, Iowa; involved Defendants' representation that they are Iowa residents, and were performing work in Polk County, Iowa on or about the time of the conduct giving rise to this action; and made use of electronic communications available to Plaintiff in Iowa.

15. Plaintiff has suffered damages in an amount exceeding $75,000.00, or the jurisdictional minimums of this Court.

## FACTUAL BACKGROUND

16. On 10 September 2022, Plaintiff received a text message on his cellular telephone from a phone number he did not recognize.

17. Plaintiff informed the sender of that text message that he believed he was an unintended recipient, as the sender appeared to be engaged in efforts to contact a third party.

18. The sender then replied to Plaintiff, apologizing for the purported mistake and introducing herself as "Emma," a named Defendant in this case.

19. Defendant Emma Doe and Plaintiff continued to send text messages to each other in a casual manner for before, at Defendant Emma Doe's request, Doe and Plaintiff moved their conversation to WhatsApp, an instant messaging platform.

20. Between September 2022 and February 2023, Plaintiff and Defendant Emma Doe formed a relationship.

21. Defendant Emma Doe told Plaintiff that was engaged in work in the Des Moines area for a local company in the field of "background data maintenance."

22. Over the course of their six-month relationship, Emma Doe and Plaintiff communicated daily and eventually exchanged emotionally and sexually intimate messages and photos. These conversations caused Plaintiff to place his trust in Emma Doe, whom he believed to be his girlfriend.

23. Emma Doe and Plaintiff also discussed their respective financial goals and interests.

24. Three months into the relationship, in December 2022, Emma Doe informed Plaintiff that she earned substantial income by executing carefully-timed trades in cryptocurrencies.

25. This information piqued Plaintiff's interest, despite having no personal experience in purchasing, owning, or trading cryptocurrency.

26. Defendant Emma Doe volunteered to assist Plaintiff in executing his own trades on a purported cryptocurrency exchange called "Energise Trade" (then visible at https://www.EnergiseTrade.com).



*Figure 1 - A screenshot of the fake exchange interface
called "Energise Trade" on Plaintiff's Android Device*

27. As she did throughout the remainder of her interaction with Plaintiff, Emma Doe gave Plaintiff step-by-step instructions by sending to Plaintiff screenshots of her phone with

circles (made using a hand-drawn feature to edit photos and screenshots) showing Plaintiff which buttons she wanted him to click.

28. Following Emma Doe's step-by-step instructions, Plaintiff:

    a. Created user accounts at cryptocurrency exchanges Foris DAX Asia Pte. Ltd. (commonly known as www.crypto.com) and Coinbase Inc (www.coinbase.com);

    b. Liquidated his retirement and savings accounts;

    c. Borrowed funds from a financial institution; and

    d. Borrowed funds from a close family member.

29. Defendant Emma Doe then gave Plaintiff step-by-step instructions for transferring his U.S. Dollar funds to Crypto.com and Coinbase.com.

30. Emma Doe then gave Plaintiff step-by-step instructions for exchanging his U.S. Dollars into Ether, the cryptocurrency native to the Ethereum blockchain and abbreviated on cryptocurrency exchanges as "ETH."

31. Emma Doe then invited Plaintiff to engage in purportedly profitable evening trading sessions on Energise Trade.

32. Plaintiff expressed to Emma Doe that his ultimate financial goal was to earn additional returns on his savings, which Emma Doe told Plaintiff was feasible.

33. Emma Doe then provided step-by-step instructions for Plaintiff to execute each trade by performing transactions on the Ethereum blockchain.

34. Each transaction Plaintiff completed involved sending certain amounts of Ether to several destinations (a unique string of letters and numbers commonly known as an "address") capable of receiving cryptocurrency on the Ethereum blockchain.

35. Emma Doe provided these addresses to Plaintiff and represented that the addresses belonged to Energise Trade.

36. Emma Doe also represented to Plaintiff that she deposited $100,000 worth of Ether into an Energise Trade account on his behalf, which he could repay after a period of successful trading.

37. Emma Doe then provided step-by-step instructions and supervised Plaintiff in making nine (9) transfers to the purported Energise Trade Ethereum addresses in 2022 and 2023, which Plaintiff made, as reflected in **Exhibit A**.

38. After Plaintiff completed each transaction, Emma Doe showed Plaintiff a display on EnergiseTrade.com which purported to reflect that Plaintiff earned a sizeable profit on each trade.

39. In reality, the Ether Plaintiff sent to Doe went directly into addresses controlled by Emma Doe. Energise Trade did not and does not exist.

40. Plaintiff lacked the technological sophistication to verify the owner of the addresses to which he was sending Ether, learn about the operator of EnergiseTrade.com, or detect that Energise Trade was neither a real website nor a legitimate cryptocurrency exchange.

41. On the date of each transaction, the U.S. dollar value of the 177.7621 Ether Plaintiff sent to the addresses specified by Defendant Emma Doe totaled $232,792.66.

42. By February 2023, Plaintiff believed his "trades" on Energise Trade had grown to more than $1,100,000.00.

43. On or about 5 February 2023, Doe assisted Plaintiff in contacting persons she represented worked for the fake Energise Trade exchange through its website, and helped him ask those persons to return his Ether to his Crypto.com account.

44. Through the website's chat function, a purported representative from Energise Trade represented to Plaintiff that it was not legally permitted to release his funds until he remitted $100,000 to Energise Trade as early payment of his taxes.

45. When Plaintiff refused to tender additional funds to Energise Trade, Emma Doe became enraged.

46. Upon learning of Plaintiff's refusal, Emma Doe attempted to extort the money from Plaintiff by threatening to expose his intimate conversations and photographs.

47. Emma Doe also attempted to extort Plaintiff by threatening the safety of Plaintiff and his family, promising Plaintiff, his mother, and ex-wife an experience of "fear like never before."

48. Specifically, she claimed that she had hired agents who would ambush Plaintiff in his mother's residence or "kidnap" him outside his known places of work or recreation, then torture him and harvest his organs to be sold on the black market for the amount of losses Plaintiff purportedly caused Doe to suffer.

49. Defendant Emma Doe's conduct was particularly cruel and predatory because she was aware of the Plaintiff's limited financial resources and deceived him into sending her his savings, retirement funds, and even taking out a bank loan and a loan from his mother.

50. After these conversations, Plaintiff has discovered that Defendant Emma Doe perpetrated against him a new and sophisticated version of an online scheme known as a "pig-butchering scam" according to the following model:

   a. One or more cybercriminals hiding behind entirely fabricate online personas form an extended, emotionally and sexually intense relationship with their intended victim over an instant messaging application;

b.  After months of building trust with their victim (or "pig"), the scammer introduces him to the concept of generating income through trading cryptocurrency and guiding the victim through steps required to send money to the scammer's Ethereum addresses;

c.  Relying on their victim's emotional dependence and lack of technical sophistication, the scammer shows their victim a website designed to look like a legitimate cryptocurrency exchange, but whose domain, interface, and features they control;

d.  The scammer then uses this website to excite the victim with legitimate-looking charts and diagrams which reflect the victim's purported trades and profits;

e.  In reality, each transaction in which the victim believes they are sending Ether to an exchange goes directly into the scammer's private addresses, after which the scammer performs a rapid series of transfers between other addresses controlled by the scammer in an attempt to disguise the final address holding the stolen Ether;

f.  Once the scammer has convinced the victim that their financial goals have been made possible by the fake exchange, the scammer "butchers" their victim by demanding (through the exchange's chat function) one final payment of Ether;

g.  Whether or not the victim makes an additional payment, the scammer keeps all of the victim's funds and vanishes from the instant messaging platform used to communicate with the victim. The scammer may even threaten the victim in an attempt to coerce further payment.

51. Upon information and belief, Defendants John Doe I-XX participated in this scheme to defraud Plaintiff by:

    a.   assisting Defendant Emma Doe by participating in communication with Plaintiff under the name "Emma" and facilitating her scheme against him;

    b.   providing images which they represented showed Defendant Emma Doe;

    c.   operating the cryptocurrency addresses used in the scam and the wallets containing those addresses;

    d.   operating and funding the telephone number used in the scam;

    e.   operating the WhatsApp account used to perpetuate the scam;

    f.   building, funding, and operating a website for the fake cryptocurrency exchange website known as EnergiseTrade.com;

    g.   falsely posing as customer service representatives for a cryptocurrency exchange;

    h.   transferring those funds to a MEXC Global exchange account and swapping them for US Dollars or other currency; and

    i.   otherwise engaging in tortious and illegal conduct against Plaintiff.

52. All Defendants engaged in the scheme set forth above and further explained in **Exhibit B**, a visual chart showing the way in which Defendants shuffled assets through "shell" blockchain addresses used by the Defendants to deprive Plaintiff of his digital assets and conceal their identities and the destination of the stolen Ether.

53. To this day, Defendants wrongfully possess Plaintiff's assets or their fiat currency equivalent in one or more accounts controlled by Garnishee and Relief Party MEXC Global LLC and its Ethereum address, 0x75e89d5979e4f6fba9f97c104c2f0afb3f1dcb88. The disposition of all stolen funds into the MEXC Global address is reflected in **Exhibit C**.

54. In all, Defendants used ten (10) separate addresses to transfer the stolen assets, as reflected in **Exhibit D**. Among these are four primary addresses which were the first to receive the stolen

assets, as well as six addresses (called "sub-addresses" for the purposes of this Complaint), all of which were controlled by Defendants Emma Doe and John Does I-XX:

    a.   The addresses used to convert funds ("Scam Addresses"):

        i.   Scam Address A

           (0xEE1036fBDaC352b302Bafce53D9AD3b0c4B52E5e);

        ii.   Scam Address B (0xb2ae32155b114427963330d67eb24b9fd1cb186d);

        iii.   Scam Address C (0x29579A5068cDC08532716B56aF7520f93DC353B1);

        iv.   Scam Address D (0xF581f461A77c073e5A8114b64FbEF76550af289b).

    b.   The addresses ("Scam Sub-Addresses") used to fraudulently transfer funds between multiple shell addresses controlled by Defendants and, ultimately, to the Defendants' MEXC Global exchange account(s) and conceal the theft and destination of funds:

        i.   Scam Sub-Address A (0xaa7491f2d97597b8821fb207fba9c4a5cd0fa984);

        ii.   Scam Sub-Address B

           (0x4b4da38323ce0042dc90143a44b59cf853b293b8);

        iii.   Scam Sub-Address C (0x4b50c6ac95ee9b9e4410a0046ff7a7f5fdb65212);

        iv.   Scam Sub-Address D

           (0x7c6ce4b36e5770e30e28b8c0403d92af711e2434);

        v.   Scam Sub-Address E

           (0x5dcc8de46b86de5a191a16adaf5db862326e5925); and

        vi.   Scam Sub-Address F (0x98807fa0180593ce84d0c43d3ee647f9963c78c3).

## <u>FIRST CAUSE OF ACTION</u>
### CONVERSION
### (Defendants Emma Doe and John Does I-XX)

55. Plaintiff hereby incorporates by reference paragraphs 1-54 of this Complaint as though fully set forth herein.

56. On or about 28 January 2023, Defendants refused to return Plaintiff's funds when, posing as customer service representatives for the fake exchange known as Energise Trade, they told Plaintiff his funds would only be released if he paid a $100,000 in "taxes" directly to Defendants.

57. Plaintiff owns and has a possessory right to the 177.7621 Ether retained by Defendants.

58. Defendants have no rightful ownership or possessory interest in Plaintiff's 177.7621 Ether.

59. Defendants wrongfully maintain possession and dominion of Plaintiff's 177.7621 Ether.

60. Defendants' possession of Plaintiff's 177.7621 Ether wrongfully deprives Plaintiff of the benefits of his property.

61. Defendants' possession of Plaintiff's 177.7621 Ether is inconsistent with, and in derogation of, Plaintiff's ownership and possessory rights.

62. Defendants' possession of Plaintiff's 177.7621 Ether is in willful and wanton disregard for the rights of Plaintiff. Defendants lack any good faith claim to Plaintiff's funds.

63. Through its continued possession, Defendants have converted Plaintiff's property.

64. As a result of Defendants' tortious conduct, Plaintiff has suffered damages and continues to suffer damages.

**SECOND CAUSE OF ACTION**
**RACKETEERING**
**18 U.S.C. § 1962(C)**
**(Defendants Emma Doe and John Does I-XX)**

65. Plaintiff hereby incorporates by reference paragraphs 1-54 of this Complaint as though fully set forth herein.

66. Defendants Emma Doe and John Does I-XX are a group of individuals that were and are associated in fact for the common and shared purpose of (1) operating a fraudulent enterprise designed to steal digital assets from Plaintiff after convincing him to send those digital assets to a fake cryptocurrency exchange controlled by Defendants and (2) funneling those funds into a series of Ethereum addresses to hide the origin and destination of those stolen assets.

67. Defendants Emma Doe and John Does I-XX operated (and continue to operate) the enterprise together.

68. Defendants Emma Doe and John Does I-XX each participated in the operation and management of the enterprise with the goal of accomplishing the same common and shared purpose.

69. Ethereum ledger transaction records from the Defendants Emma Doe and John Does I-XX reveal that Plaintiff was far from the first victim of their scheme. In fact, $1,105,051.38 worth of Ether have passed through the Defendants' addresses since September 2022, as reflected in **Exhibit E**.

70. As alleged in detail through this Complaint and its exhibits, Defendants Emma Doe and John Does I-XX engaged in a pattern of racketeering activity that included transmissions by means of wire, radio, or television communication with intent to defraud.

71. As alleged in detail through this Complaint and its exhibits, Defendant Emma Doe and John Does I-XX engaged in a pattern of racketeering activity that included in engaging in monetary transactions in property derived from specified criminally derived property and unlawful activity.

72. As alleged in detail through this Complaint and its exhibits, Defendants Emma Doe and John Does I-XX engaged in a pattern of racketeering activity that included conducting financial transactions with the intent to promote the carrying-on of specified unlawful activity and/or to conceal or disguise the nature, location, source, ownership, and proceeds of specified unlawful activity.

73. As alleged in detail through this Complaint and its exhibits, Defendants Emma Doe and John Does I-XX engaged in a pattern of racketeering activity that includes investing racketeering income by using the stolen assets on a cryptocurrency exchange, trading those assets to obtain a profitable return, and obstruction of justice.

74. The conduct of Defendants Emma Doe and John Does I-XX, by their nature, threaten continued unlawful activity into the future.

75. Other individuals – believed to be part of the same scheme recited herein and its perpetrators (Defendants Emma Doe and John Does I-XX) – have continued to contact and attempt to contact Plaintiff to further defraud him. Their efforts continue nearly 8 months after they first contacted Plaintiff, and Plaintiff expects their efforts to persist.

76. The conduct of Defendants Emma Doe and John Does I-XX are not isolated events, and are part of a widespread scheme to defraud other unsuspecting victims for the same or similar purposes and to achieve the same or similar results through the same or similar methods. See, for example, **Exhibit E**, the amount of cryptocurrency from victims other

than Plaintiff, which was also funneled rapidly through the same shell accounts and
eventually transferred to one or more MEXC Global accounts.

77. Defendants Emma Doe and John Does I-XX each had their own roles in the enterprise and
maintained those roles throughout the course of the scheme, and each personally conducted
the affairs of the enterprise.

78. As a foreseeable and natural consequence of the enterprise, Plaintiff has lost more than
$230,000 worth of digital assets.

79. Plaintiff suffered other damages to his property as a result of the fraudulent scheme.

80. Pursuant to 18 U.S.C. § 1964(c), Plaintiff is entitled to an award of three times the damages
sustained, no less than $698,377.98, the costs of this action, and reasonable attorney fees.

**THIRD CAUSE OF ACTION**
**CONSPIRACY TO COMMIT RACKETEERING**
**18 U.S.C. § 1962(d)**
**(Defendants Emma Doe and John Does I-XX)**

81. Plaintiff hereby incorporates by reference paragraphs 1-54 and 65-79 of this Complaint as
though fully set forth herein.

82. Even if they did not direct or manage the affairs of the enterprise, Defendants Emma Doe
and John Does I-XX agreed that someone would commit predicate acts as detailed above.

83. Defendants Emma Doe and John Does I-XX were each aware of the essential nature and
scope of the enterprise, and they intended to participate in it and share its profits.

84. Plaintiff was deprived of money that he otherwise would not have lost but for the conduct
of the Defendants.

85. As a direct and proximate cause of Defendants Emma Doe and John Does I-XX's
racketeering activities, Plaintiff has been injured through the theft of his digital assets.

86. As a foreseeable and natural consequence of the fraudulent scheme described above, Plaintiff lost more than $230,000.00.

87. Plaintiff suffered other damages as a result of the fraudulent scheme.

88. Pursuant to 18 U.S.C § 1964(c), Plaintiff is entitled to an award of three times the damages sustained, or no less than $698,377.98, the costs of this action, and reasonable attorneys' fees.

**FOURTH CAUSE OF ACTION**
**UNAUTHORIZED DISCLOSURE OF INTIMATE IMAGES**
**Iowa Code § 659A**
**(Defendants Emma Doe and John Does I-XX)**

89. Plaintiff hereby incorporates by reference paragraphs 1-54 of this Complaint as though fully set forth herein.

90. Iowa Code §659A provides remedies for individuals who have been threatened with the unauthorized disclosure of intimate images when they suffer emotional distress, regardless of whether that distress is accompanied by physical or economic harm.

91. On or about 1 October 2022, Plaintiff voluntarily transmitted a private photo ("intimate image") of his uncovered genitals to Defendant Emma Doe.

92. At all times, Plaintiff created and Defendant Emma Doe obtained the intimate image under circumstances in which Plaintiff had a reasonable expectation of privacy.

93. At all times, Defendant Emma Doe obtained the intimate image via fraud and false pretense.

94. Upon information and belief, Plaintiff's intimate image was received by both Defendant Emma Doe and the John Doe defendants.

95. On or about 20 January 2023, Defendant Emma Doe and the John Doe defendants implicitly threatened to disclose Plaintiff's intimate image without his consent by

promising that Plaintiff's employer, coworkers, family, Instagram followers and "Facebook feed [would] get a lot of messages" about expose Plaintiff's "nasty" conduct.

96. Plaintiff reasonably understood these words to convey a threat to disclose Plaintiff's intimate images without his consent.

97. The intimate image was private.

98. Plaintiff is identifiable in the photo.

99. At all times, Defendants Emma Doe and John Does I-XX acted willfully and wantonly, in reckless disregard of the rights of Plaintiff.

100. As a result of Defendants' conduct, Plaintiff has suffered significant emotional distress.

## FIFTH CAUSE OF ACTION
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (Defendants Emma Doe and John Does I-XX)

101. Plaintiff hereby incorporates by reference paragraphs 1-54 and 89-99 of this Complaint as though fully set forth herein.

102. As set forth above, Defendants Emma Doe and John Does I-XX acted negligently and tortiously with respect to Plaintiff.

103. As set forth above, Defendants invaded property and privacy interests of Plaintiff that were protected by statutory and common law.

104. Plaintiff's emotional distress damages have arisen naturally from those invasions of his protected interests.

105. As a direct and proximate result of the conduct of Defendants Emma Doe and John Does I-XX, Plaintiff has suffered and will continue to suffer mental, emotional, and psychological injuries, including severe emotional distress.

106.     Defendants Emma Doe and John Does I-XX engaged in behavior towards Plaintiff that a reasonable person in their position would know or should have known would inflict or cause emotional distress to Plaintiff.

### SIXTH CAUSE OF ACTION
### FRAUDULENT MISREPRESENTATION
**(Defendants Emma Doe and John Does I-XX)**

107.     Plaintiff hereby incorporates by reference paragraphs 1-54 and 55-64 of this Complaint as though fully set forth herein.

108.     On or about 10 September 2022, Defendant Emma Doe represented to Plaintiff that "Energise Trade" was an independent website and legitimate cryptocurrency exchange where Plaintiff could safely invest funds, and that she had had substantial financial success performing the trades she would instruct Plaintiff to execute.

109.     On or about 28 January 2023, Defendants John Doe I-XX represented to Plaintiff that they were members of a customer service team for a purportedly legitimate website and cryptocurrency exchange, "Energise Trade."

110.     Defendants knew that the above representations were false.

111.     Defendants' representations were material, and Plaintiff would not have lost his funds if not for the Defendant's deceit.

112.     Defendants knew their conduct was wrongful and intentionally acted despite this knowledge, or made such representations in reckless disregard of whether the representations were false.

113.     Defendants engaged in the above-recited conduct in order to intentionally deceive Plaintiff into sending them his Ether.

114.     Defendants acted out of spite, malice or ill will towards Plaintiff.

115.     As an unsophisticated party without experience in blockchain technology or investing, and as a person who genuinely believed he was in a trusting and loving relationship with Defendant Emma Doe, Plaintiff's reliance on Defendants' representations was justifiable.

116.     Defendants' conduct was and is a direct and proximate cause of Plaintiff's losses and damages.

**SEVENTH CAUSE OF ACTION**
**VOIDABLE TRANSACTIONS**
**Iowa Code § 684**
**(Defendants Emma Doe and John Does I-XX)**

117.     Plaintiff hereby incorporates by reference paragraphs 1-54 of this Complaint as though fully set forth herein.

118.     Each time Plaintiff sent Ether to Defendants via the transactions described above, Defendants initiated a rapid series of subsequent transactions (hereinafter "subsequent conveyances") using multiple addresses on the Ethereum blockchain.  The scam addresses and sub-addresses involved in the scheme and the fraudulent transfers are explained in detail in **Exhibit B**.

119.     These subsequent conveyances essentially created a "shell game" in which the stolen Ether passes quickly from one Ethereum address under Defendants' to another, with only momentary delay between transactions, before being shuffled into an address associated with a legitimate cryptocurrency exchange.

120.     To wit:

a.     On 19 October 2022, when Plaintiff sent 0.15113837 Ether from his Coinbase.com account to one of the Defendants' addresses, the Defendants transferred the same amount of Ether two (2) minutes later to a second address.  The Defendants then

comingled these funds with other funds in the same address, and then transferred 10.39 Ether six (6) days later to a third address.

b. On 28 October 2022, when Plaintiff sent 1.88831613 Ether from his Coinbase.com account to one of the Defendants' addresses, the Defendants transferred the same amount of Ether two (2) minutes later to a second address.  The Defendants then comingled these funds with other funds in the same address, and then transferred 2.0 Ether five (5) minutes later to a third address.

c. On 14 November 2022, when Plaintiff sent 11.99191596 Ether from his Coinbase.com account to one of the Defendants' addresses, the Defendants transferred the same amount to a second address three (3) minutes later.  The Defendants then transferred the same amount one (1) minute later to a third address.

d. On 17 November 2022, when Plaintiff sent 4.29038878 Ether from his Coinbase.com account to one of the Defendants' addresses, the Defendants transferred the same amount three (3) minutes later to a second address.  The Defendants then transferred the same amount to a third address two (2) minutes later.

e. On 23 November 2022, when Plaintiff sent 21.22158099 Ether from his Coinbase.com account to one of the Defendants' addresses, the Defendants transferred the same amount three (3) minutes later to a second address.  The Defendants then transferred the same amount two (2) minutes later to a third address.

f. On 8 December 2022, when Plaintiff transferred 70.54827169 Ether from his Coinbase.com account to one of the Defendants' addresses, the Defendants

transferred the same amount less than one (1) minute later to a second address.  The Defendants then performed three sub-transactions with the proceeds to a third address to disperse the same total amount of Plaintiff's Ether:

   i.  24 Ether ten (10) minutes after funds were received in the second address;

   ii.  24 Ether eleven (11) minutes after the funds were received in the second address; and

   iii.  22.54 Ether twelve (12) minutes after the funds were received in the second address.

g.  On 16 December 2022, when Plaintiff sent 24.33963 Ether from his Crypto.com account to one of the Defendants' addresses, the Defendants transferred the same amount of Ether six (6) minutes later to a second address. The Defendants then transferred the same amount of Ether one (1) minute later to a third address.

h.  On 12 January 2023, when Plaintiff sent 13.70461 Ether from his Crypto.com account to one of the Defendants' addresses, the Defendants transferred the same amount of Ether one (1) minute later to a second address.  The Defendants, one (1) minute later, transferred the same amount of Ether to a third address.

i.  On 20 January 2023, when Plaintiff sent 29.5966 Ether from his Crypto.com account to one of the Defendants' addresses, the Defendants transferred the same amount of Ether four (4) minutes later to a second address.  The Defendants then performed two sub-transactions with the proceeds from their conversion of Plaintiff's 29.5966 Ether:

   i.  Two (2) minutes after the second address received Plaintiff's Ether, the Defendants sent 18 Ether to a third address.  It then combined those 18 Ether

with 2 Ether already in its address and transferred them on 20 January 2023
– six (6) days later – to a fourth address.

    ii.   Three (3) minutes after the second address received Plaintiff's Ether, the
Defendants sent 11.5996 Ether to the third address.  It then combined those
11.5996 Ether with Ether already in its address and transferred them 2.5
hours later to the fourth address.

121.    After Plaintiff's Ether passed through each of the eleven shell transactions
described above, it finally settled in a single address (referred to previously as the "Fourth
Address" on the Ethereum blockchain: Garnishee and Relief Party MEXC Global's
Ethereum address at 0x75e89d5979e4f6fba9f97c104c2f0afb3f1dcb88.

122.    Plaintiff's Ether is traceable to the MEXC global address as explained in **Exhibit
B** and **Exhibit C**.

123.    At the moment Defendants made the subsequent conveyances, Plaintiff had legal
and equitable claims to the Ether transmitted thereby.

124.    Defendants made the subsequent conveyances in a deliberate effort to disguise the
ultimate destination of the stolen Ether from technologically unsophisticated parties; to
avoid its obligations to Plaintiff; to hinder, delay or defraud Plaintiff's efforts to assert his
legal and equitable claims; and add a façade of legitimacy to any legitimate cryptocurrency
exchange with which the Defendants might interact.

125.    Defendants' conduct has no good faith defense and was done deliberately and with
is a proximate cause of Plaintiff's damages.

126.    Plaintiff has incurred damages and continues to incur damages today.

127.     Iowa Code § 684.7(1)(c) permits a Plaintiff to obtain an injunction against further

disposition by . . . a transferee . . . of the asset transferred . . ., as well as "any . . . relief the

circumstances may require."

**EIGHTH CAUSE OF ACTION**
**AIDING AND ABETTING TORTIOUS CONDUCT**
**(John Does I-XX)**

128.     Plaintiff hereby incorporates by reference paragraphs 1-54 of this Complaint as

though fully set forth herein.

129.     Defendant Emma Doe committed the tort of conversion and other unlawful acts

(collectively, "the tortious conduct" as described throughout this Complaint), thereby

causing financial and emotional injury to Plaintiff.

130.     Defendants John Doe I-XX knew that Defendant Emma Doe was going to, and in

fact did, engage in the tortious conduct against Plaintiff.

131.     Defendants John Doe I-XX substantially encouraged and/or substantially assisted

Defendant Emma Doe in committing the tortious conduct.

132.     A causal relationship exists between the assistance and/or encouragement of

Defendants John Doe I-XX and the tortious conduct of Defendant Emma Doe.

133.     Defendants John Doe I-XX personally profited and enriched themselves at the

expense of Plaintiff and his assets because of the conduct of Defendant Emma Doe.

134.     The actions of Defendants Emma Doe and Defendants John Doe I-XX were

intentional and wrongful conduct motivated by spite or ill will.

135.     The actions of Defendants John Does I-XX was: (a) intentional; (b) done to serve

their own interests, having reason to know and consciously disregard the substantial risk

that their conduct might significantly injure the rights of others, including Plaintiff; or (c)

a conscious pursuit of conduct knowing that it created a substantial risk of significant harm to other persons.

136.     Defendants, then, should be held jointly and severally liable.

## NINTH CAUSE OF ACTION
## DECLARATORY ACTION
## (Defendant 177.7621 Ether)

137.     Plaintiff hereby incorporates by reference all paragraphs of this Complaint as though fully set forth herein.

138.     There is an actual and justiciable controversy between Plaintiff, Defendants, and Garnishee and Relief Party concerning the party entitled to enforce the rights of redemption represented by the Ether Defendant.

139.     As set forth above, Plaintiff is entitled to the rights of redemption represented by the Ether Defendant because Defendants obtained Ether Defendant through unlawful and tortious means.

140.     Plaintiff is, therefore, entitled to judgment declaring that Plaintiff is entitled to enforce the right of payment represented by the Ether Defendant.

141.     A declaratory judgment will serve the useful purpose of clarifying and settling the legal rights of the parties with respect to the rights of redemption and other rights represented by the Ether Defendant.  In particular, a declaratory judgment will provide essential clarity to Plaintiff in ascertaining its enforcement options in the event that it obtains a judgment against Defendants.

142.     The substantial controversy between the parties having adverse interests is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment, as it is an important and effective remedy available to the parties.

143.     By reason of the foregoing, Plaintiff is entitled to judgment declaring that Plaintiff is entitled to enforce the right of payment represented by the Ether Defendant.

**TENTH CAUSE OF ACTION**
**CONSTRUCTIVE TRUST**
**(Defendant 177.7621 Ether)**

144.     Plaintiff hereby incorporates by reference all paragraphs of this Complaint as though fully set forth herein.

145.     Iowa's Uniform Voidable Transactions Act provides that an individual with a claim to property that has been the subject of a fraudulent transfer may levy execution on the asset transferred or its proceeds, including through a constructive trust.  Iowa Code § 684.7(1)(c)(3); *see also Shea v. Lorenz*, 869 N.W.2d 196, 197 (Iowa Ct. App. 2015) (citations omitted).

146.     Plaintiff has a claim on the Ether Defendant because it constitutes the crypto assets (or the proceeds thereof) which were wrongfully and unlawfully taken from Plaintiff and retained by Defendants Emma Doe and John Does I-XX.

147.     Defendants forfeited their rights to the Ether Defendant by engaging in unlawful conduct.

148.     In principles of equity and good conscience, the rights of redemption represented by the Ether Defendant should be held in Trust by MEXC Global for the benefit of Plaintiff.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for the following relief:

(a) Holding Defendants liable, jointly and severally, for their conduct;

(b) An award of actual damages, in amount no less than $232,792.66;

(c) An award of treble damages as permitted or required by law, in an amount no less than $698,377.98;

(d) An award of statutory damages per Iowa Code § 659A.6(1)(a)(2) in the amount of $10,000.00;

(e) An award of punitive damages in an amount no less than four times Plaintiff's actual losses, or $931,170.64;

(f) An award of restitution for Defendants' wrongful conduct;

(g) An award of reasonable attorneys' fees and costs;

(h) An award of interest;

(i) A judgment and award:

    a. enjoining Defendants Emma Doe and John Does I-XX against further disposition of Plaintiff's property and declaring void as a matter of law the subsequent transactions identified herein and in **Exhibit B**; and

    b. against Defendant 177.7621 Ether:

        i. directing Defendants and any entity with custody or control over the assets of Defendants Emma Doe and John Does I-XX to transfer to Plaintiff assets substantially equivalent to the value of the stolen crypto assets, including equivalent fiat currency, and directing MEXC Global to assign to Plaintiff the rights of redemption represented by the Ether Defendant;

        ii. declaring that Plaintiff is entitled to enforce the rights of redemption represented by the Ether Defendant; directing MEXC Global to assign those rights to Plaintiff, and directing MEXC Global to permanently

deny access to its exchange any customer or account which has

received assets from the Scam Addresses and Scam Sub-Addresses,

effectively removing the Ether from circulation;

iii.   directing MEXC Global to hold in trust for the benefit of Plaintiff the

rights of redemption presented by the Ether Defendant and to assign to

Plaintiff those rights as soon as practicable;

(j)  The creation of a constructive trust; and

(k)  Such other and further relief that the Court deems reasonable and just.

## JURY TRIAL DEMAND

Plaintiff demands trial by jury for all issues so triable.

Respectfully submitted,

/s/ *Joseph R. Casey*
HARDING LAW OFFICES
Joseph R. Casey, Esq. (AT0014276)
1217 Army Post Road
Des Moines, Iowa 50315-5596
Telephone: (515) 287-1454
Facsimile: (515) 287-1442
joe@iowalegal.com
ATTORNEYS FOR PLAINTIFF